**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Henderson Luxury Imports, Inc.,

Plaintiff

v.

McCollister's Global Services, Inc.; McCollister's Brokerage Services, Inc.; and Orlandi's Towing LLC,

Defendants

Case No.: 2:26-cv-00909-JAD-MDC

**Order Granting Motion to Dismiss with Limited Leave to Amend by November 18, 2026**

[ECF No. 9]

BMW Henderson seeks to hold the transportation company McCollister's responsible for a purloined Cadillac. It alleges that McCollister's contributed to a scheme that resulted in the vehicle's theft by unknown parties by allowing the creation of a bill of lading with its logo and confidential information about the shipment that BMW Henderson relied upon when releasing the car. So it sues McCollister's under the federal Carmack Amendment and for conversion, civil conspiracy, intentional misrepresentation, and negligence.

McCollister's moves to dismiss the claims against it, arguing that the Carmack Amendment is inapplicable because it was not acting as a motor carrier in this transaction, and that the state-law claims are preempted by the Federal Automotive Administrative Authorization Act (FAAAA). Because the complaint alleges that McCollister's is a broker, the Carmack Amendment is inapplicable. And because the state-law claims relate to the services of a broker with respect to the transportation of property and are not related to physical safety, they are preempted by the FAAAA. So I grant McCollister's motion with limited leave to amend by November 18, 2026.

## Background

**A. BMW Henderson alleges that McCollister's, Orlandi's, and several unknown parties conspired to steal a Cadillac.[1]**

Henderson Luxury Imports, dba BMW Henderson arranged for the interstate transportation of a 2024 Cadillac Escalade-V worth over $120,000 from Nevada to Florida.[2] An automotive-logistics company assigned the order to McCollister's, a "national transportation company and broker," and a driver with the towing company Orlandi's picked the car up from the dealership in January of 2026.[3] But the car never made it to West Palm Beach. The driver instead dropped it at a residential address in North Las Vegas, based on instructions in a text message he received from someone purporting to be from McCollister's, and with the understanding that another carrier would pick up the car and bring it to Florida.[4] The Cadillac remains at large.[5]

**B. BMW Henderson sues McCollister's and others under the Carmack Amendment and for conversion, civil conspiracy, intentional misrepresentation, and negligence.**

BMW Henderson sues McCollister's Global Services, Inc. and McCollister's Brokerage Services, Inc. (collectively, "McCollister's"), along with Orlandi's Towing, under the Carmack Amendment and for conversion, civil conspiracy, intentional misrepresentation, and negligence. It also lists several unknown defendants that it claims were involved in the theft. BMW

---

[1] These facts are merely a summary of the plaintiff's allegations; they are not intended as findings of fact.

[2] ECF No. 4 at ¶ 10.

[3] *Id.* at ¶ 15.

[4] *Id.* at ¶ 19–20.

[5] *Id.* at ¶ 21.

Henderson theorizes that under the Carmack Amendment, McCollister's and Orlandi's are "liable . . . for the actual loss [of] or injury to property" as the "receiving and/or delivering carrier."[6] The state-law claims are premised on the allegation that the defendants all had a role in stealing the car.[7] McCollister's moves to dismiss all claims against it, arguing that the Carmack Amendment does not apply to its conduct here because it operated as a broker and not a motor carrier or a freight forwarder, and that BMW Henderson's state-law claims are preempted by the FAAAA because they are not related to safety.[8]

## Discussion

### A. The Carmack Amendment is inapplicable because BMW Henderson does not plead facts establishing that McCollister's operated as a motor carrier or freight forwarder in this transaction.

The Carmack Amendment governs liability for actual loss or damage to property transported in interstate commerce, allowing an aggrieved party to bring a civil action against the delivering carrier and the carrier responsible for the loss or damage.[9] The statute applies to motor carriers and freight forwarders, but not to brokers who arrange the transportation but do

---

[6] *Id.* at ¶ 28.

[7] To support the conversion claim, BMW Henderson alleges that "Defendants intentionally exercised dominion and control over the Vehicle inconsistent with BMW Henderson's rights by presenting[,] transmitting, or using a counterfeit or unauthorized BOL, inducing BMW Henderson to release the Vehicle, diverting the Vehicle to residential drop, and causing the Vehicle to be removed concealed, or converted to Defendant[s]' benefit." ECF No. 4 at ¶ 34. For the civil-conspiracy claim, BMW alleges that the defendants "entered into an agreement or undertaking to accomplish the unlawful objective of theft and conversion of the Vehicle." *Id.* at ¶ 39. The intentional-misrepresentation claim is premised on allegations that McCollister's "knowingly made false representations of material fact concerning: (a) whether Orlandi's was assigned to pick up the Vehicle on its behalf; and (b) whether a bill of lading was created and forwarded to Orlandi's." *Id.* at ¶ 44. Finally, the negligence claim is premised on allegations that McCollister's breached its duty to exercise reasonable care in undertaking transportation and logistics services. *Id.* at ¶ 51.

[8] ECF No. 9 at 3.

[9] 49 U.S.C. § 14706.

not carry it out.[10] McCollister's argues that although BMW Henderson says in its complaint that McCollister's was a motor carrier or freight forwarder subject to the Carmack Amendment, it failed to "allege facts plausibly establishing that [McCollister's] acted as anything other than a broker within the meaning" of the statute.[11] BMW Henderson responds that whether McCollister's conduct is covered by the Carmack Amendment is a question of fact because "the documents and communications establishing [McCollister's] role are in [its] and third parties' possession."[12] McCollister's role in this transaction, BMW Henderson argues, is "based entirely on the conduct of the party."[13]

The complaint states that McCollister's "is a national transportation company and broker that was assigned to BMW Henderson's order" and that "McCollister's accepted the assignment and proceeding with arranging for a carrier to perform the transportation."[14] BMW Henderson asserts later in its first claim for relief that McCollister's is a motor carrier or freight forwarder because it "received the [v]ehicle, actually or constructively, in connection with interstate transportation."[15] But BMW Henderson does not state that McCollister's ever had physical control of the car. It alleges that someone from Orlandi's showed up at the dealership with a bill of lading (BOL) that bore McCollister's logo and information and picked up the car.[16] But BMW Henderson fails to explain why the fact that the BOL had this information means that

---

[10] *Id. See also ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 994 (D. Ariz. 2014).

[11] ECF No. 9 at 4 (cleaned up).

[12] ECF No. 11 at 6.

[13] *Id.*

[14] ECF No. 4 at ¶ 12.

[15] *Id.* at ¶ 26.

[16] *Id.* at ¶ 16.

McCollister's is a motor carrier and not a broker. And the complaint is explicit that McCollister's arranged for a carrier to perform the transport and that McCollister's claimed at one point that it was having trouble finding a suitable carrier to complete the transport, inferring that McCollister's did not itself perform the transport.[17] Stating conclusorily that McCollister's acted as a motor carrier is not enough to satisfactorily plead that element. So I find that BMW Henderson has failed to plead the facts necessary to state a claim against McCollister's under the Carmack Amendment. But I grant it leave to amend this cause of action if it can add true facts from which it can be inferred that McCollister's was acting as a motor carrier or freight forwarder in this transaction.[18]

**B. The FAAAA preempts BMW Henderson's state-law claims because they are related to the broker's services and are not about physical safety.**

The FAAAA bars state-law claims "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."[19] The statute also includes a safety exception, which states that the FAAAA "shall not restrict the safety regulatory authority of a State with respect to motor vehicles."[20] BMW Henderson argues that its state-law claims are not preempted by the FAAAA because the duties that it says McCollister's abrogated are not "economic regulation[s] of broker

[17] *Id*. at ¶ 14.

[18] In its response to the motion to dismiss, BMW Henderson identifies several areas in which it could plead more specific facts. ECF No. 11 at 13. It should do so.

[19] 49 U.S.C. § 14501(c)(1).

[20] 49 U.S.C. § 14501(c)(2)(A).

prices, routes, or services."[21] And even if preemption does apply, it contends, these tort claims fall within the safety exception.[22]

The dealership's theory that its tort claims aren't the type covered by the FAAAA preemption ignores Ninth Circuit law. The court held in in *Miller v. C.H. Robinson Worldwide, Inc.*, that the plaintiff Allen Miller's negligence claims were "related to" broker services because "the selection of motor carriers is one of the core services of brokers."[23] The court explained that because Miller's negligence claims sought to interfere at the point at which the broker was arranging transportation by a motor carrier, they were connected to broker services in a way that distinguished them from state-law claims in previous cases that were not preempted by the FAAAA.[24] Similarly, BMW Henderson alleges wrongdoing on the part of McCollister's at the point of selecting a motor carrier and coordinating logistics with that company to complete a job. So the allegations are clearly connected to the services of the broker, BMW Henderson's tort claims fall within the scope of FAAAA preemption.

BMW Henderson relies on *Miller* for the proposition that the Ninth Circuit has recognized that "the FAAAA's broad safety exception preserves state common-law tort claims against brokers."[25] Miller was seriously injured after being struck by a semi-tractor trailer, and he sued the freight broker that arranged for the trailer to complete a transport.[26] The broker

---

[21] ECF No. 11 at 11.

[22] *Id.*

[23] *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020).

[24] *Id.* (comparing the facts to those of *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014); and *Cal. Trucking Ass'n v. Su*, 903 F.3d 953 (9th Cir. 2018)).

[25] ECF No. 11 at 3.

[26] *Miller*, 976 F.3d at 1020.

argued that the safety exception to the FAAAA did not cover his claims because they were not encompassed by the safety regulatory authority of the state.[27] The court explained that Congress's purpose in enacting the safety exception was to ensure that by preempting the states' economic authority over the trucking industry, it did not restrict the states' power protect the health and safety of their citizens.[28] It partially relied on a House Conference Report stating that the conferees attempted to address concerns that the FAAAA would not allow regulatory protection to continue for "'non-economic factors, such as . . . safety'" with the safety exception.[29] The court concluded that Miller's claims satisfied the safety exception and thus were not preempted by the FAAAA.[30]

BMW Henderson stretches the Ninth Circuit's holding in *Miller* too far because *Miller*'s facts are materially distinguishable from those here. Miller sued the broker after he was hit by a truck and rendered quadriplegic, alleging that it had negligently selected an unsafe motor carrier and that the carrier's history of safety violations indicated that the broker should have known that the carrier was unsafe.[31] The court explained that the FAAAA was not meant to get in the way of the state's ability to protect the safety of its citizens and was meant instead to cover regulation of economic aspects of the trucking industry. But BMW Henderson alleges only economic injury and that McCollister's "failed to exercise reasonable care in safeguarding shipment data, verifying transportation information, implementing reasonable pickup and delivery protocols,

---

[27] *Id.* at 1026.

[28] *Id.*

[29] *Id.* (quoting H.R. Conf. Rep. 103-677 at 88).

[30] *Id.* at 1025–26.

[31] *Id.* at 1020–21.

confirming authority before a residential drop, and documenting identity and receipt."[32] The damage that comes from a car being stolen is markedly different from the injury that results from car accidents, and the *Miller* analysis cannot be extended to BMW Henderson's claims.

BMW Henderson also relies on the Supreme Court's opinion from earlier this year in *Montgomery v. Caribe Transportation II, LLC*.[33] It contends that the Court in *Montgomery* "reaffirmed that common-law duties and standards of care form part of a [s]tate's authority to regulate safety as an exception to general FAAAA preemption."[34] But that case was also about negligent hiring and physical safety, not about economic damages. Shawn Montgomery suffered severe and permanent injuries after his tractor-trailer was struck by a truck driven by an employee of a motor carrier, and he sued the broker that hired that motor carrier for negligent hiring.[35] The broker argued that the FAAAA preempted Montgomery's claim, but the Supreme Court found that his claims were preserved by the safety exception.[36] The High Court reasoned that the crux of Montgomery's claim was that the broker should have known based on the motor carrier's subpar safety ratings from federal regulators that choosing that motor carrier was "reasonably likely to cause an accident."[37] It also emphasized that "[t]he safety exception saves only a subset of preempted claims: those involving regulations concerning motor vehicle safety."[38] Nothing in the Court's analysis suggests that the safety exception is meant to apply to

---

[32] ECF No. 11 at 11.

[33] *Montgomery v. Caribe Trans. II, LLC*, 608 U.S. 219 (2026).

[34] ECF No. 11 at 3 (citing *Montgomery*, 608 U.S. at 219–220).

[35] *Montgomery*, 608 U.S. at 224.

[36] *Id.* at 225.

[37] *Id.* at 227.

[38] *Id.*

the kind of state-law claims BMW Henderson pleads here—claims seeking to redress purely economic loss. So I cannot conclude that the safety exception saves BMW Henderson's state-law claims from FAAAA preemption, and I grant McCollister's motion to dismiss them.[39]

**Conclusion**

IT IS THEREFORE ORDERED that McCollister's motion to dismiss **[ECF No. 9] is GRANTED.** BMW Henderson's claims against the McCollister defendants are dismissed with leave to amend only its Carmack Amendment claim by November 18, 2026.

U.S. District Judge Jennifer A. Dorsey
October 29, 2026

[39] If the Carmack Amendment claim is adequately pled in the future, then the FAAAA preemption question will be irrelevant because Carmack Amendment preempts state-law claims. 49 U.S.C. § 14706(a)(1). BMW Henderson acknowledges this in its response to the motion to dismiss, stating that "its state[-]law claims are pleaded in the alternative against any entity found to have acted as a broker or to have engaged in conduct outside Carmack's scope." ECF No. 11 at 13. So the state-law claims will not move forward with either outcome, and I dismiss them without leave to amend.